UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MIGUELINA PEREZ,

                              Plaintiff,                          REPORT AND
                                                                 RECOMMENDATION
                 -against-
                                                                 17-CV-2965 (RRM)
PINO GROCERY CORP. and FEDERICO DE
LA ROSA, a/k/a Federico Delarosa,

                              Defendants.
----------------------------------------------------------------x

ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:

       In this wage-and-hour action, plaintiff Miguelina Perez ("Perez" or "plaintiff") seeks to

recover, *inter alia*, unpaid overtime wages from her former employers, defendants Pino

Grocery Corp. ("Pino Grocery") and Federico De La Rosa ("De La Rosa") (collectively,

"defendants").   See generally Complaint (May 16, 2017) ("Compl."), DE #1.   Currently

pending before this Court, on a referral from the Honorable Roslynn R. Mauskopf, is

plaintiff's motion for default judgment.   See Motion for Default Judgment (Jan. 10, 2018)

("Pl. Mot."), DE #20; Order Referring Motion (Jan. 16, 2018).

       For the reasons set forth herein, this Court recommends that default judgment be

granted against both defendants, jointly and severally, in the amount of $21,447.36,

representing $13,935.10 in compensatory, liquidated, and statutory damages, $7,435.00 in

attorney's fees and $77.26 in costs.

## BACKGROUND

## I.     The Original Complaint's Allegations

       The Complaint alleges that plaintiff worked for defendants at their restaurant, from

November 2016 to March 12, 2017, performing various kitchen duties, including preparing

food and washing dishes.   See Compl. ¶¶ 8, 21.   Plaintiff worked five days per week, from 7:30 a.m. to 5:00 p.m., without a lunch break, for a total of 47.5 hours per week.   See id. ¶¶ 24, 26.   Defendants paid plaintiff $330 per week.   See id. ¶ 25.

In the original Complaint, plaintiff claims that she is owed overtime wages under both the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").   See id. ¶¶ 27-28, 36-38, 40, 44, 45.   In addition, plaintiff alleges that defendants failed to provide her with any wage notices or paystubs, in violation of the NYLL.   See id. ¶¶ 47-48.

## II.   Procedural History

On May 16, 2017, plaintiff filed her original Complaint, naming as defendants Pino Grocery and De La Rosa.   As discussed above, in the original Complaint, plaintiff sought damages only for defendants' failure to pay overtime wages and provide wage notices and paystubs.   Plaintiff served the original Complaint by delivering copies at Pino Grocery's principal place of business to "Hector Grullon," a "person of suitable age or discretion" for purposes of service on De La Rosa, and a person he knew to be "[a]uthorized" to accept service on Pino Grocery.   See Affidavits of Service (May 30, 2017), DE #6, #7.   Following defendants' failure to timely respond to the Complaint, plaintiff requested that a certificate of default be entered against De La Rosa and Pino Grocery, see Request for Certificate of Default (July 5, 2017), DE #10, and the Clerk of the Court entered a notation of default the next day, see Clerk's Entry of Default (July 6, 2017), DE #11.

On July 19, 2017, plaintiff filed her Amended Complaint, adding a claim for failure to pay minimum wages.   See Amended Complaint (July 19, 2017) ("Am. Compl.") ¶¶ 2-3, 16,

27, 28, 36, 39, 41, 45, 47, DE #13.   Plaintiff served the Amended Complaint by mailing copies to both defendants at Pino Grocery's principal place of business.   See Certificate of Service (Aug. 1, 2017), DE #15.   Following defendants' failure to respond to the Amended Complaint, plaintiff again requested entry of default, see Request for Certificate of Default (Oct. 25, 2017), DE #16, which request was granted the next day, see Clerk's Entry of Default (Oct. 26, 2017), DE #17.   Plaintiff moved for default judgment on January 10, 2018.

Following Judge Mauskopf's referral of the motion to the undersigned, this Court issued an Order directing plaintiff to show cause why the Clerk's October 26, 2017 Entry of Default should not be vacated and plaintiff's motion for default judgment denied without prejudice because the Amended Complaint, which "'asserts a new claim for relief,'" was served by mail in contravention of Rule 5(a)(2) of the Federal Rules of Civil Procedure.   See Order to Show Cause (Jan. 19, 2018) at 2, DE #22 (quoting Fed. R. Civ. P. 5(a)(2)).   This Court offered plaintiff the alternative option of consenting to vacatur of the October 26, 2017 Entry of Default and pursuing default judgment based on the original Complaint.   See id. The Court warned, however, that based on the relevant Affidavit of Service, service of the original Complaint on Pino Grocery may have been defective.   See id.   Accordingly, in the event that plaintiff elected to proceed with the motion for default judgment based on the original Complaint, plaintiff was directed to show cause why the July 6, 2017 Entry of Default should not be vacated.   See id. at 2-3.

Plaintiff responded by letter dated January 29, 2018, electing to proceed with her motion for default judgment based on the original Complaint.   See Response to Order to Show

- 3 -

Cause (Jan. 29, 2018), DE #23.   Plaintiff further submitted a declaration from her process

server and amended affidavits of service.   See Declaration of Corey Guskin (Jan. 29, 2018)

("Guskin Decl."), DE #23-1; Amended Affidavit of Service (Jan. 29, 2018), DE #23-2;

Amended Affidavit of Service (Jan. 29, 2018), DE #23-3.   According to the process server, it

was clear to him that Mr. Grullon was an employee of defendant's "supermarket/store" and

that he was authorized to accept service because the process server asked for the manager and

an employee told him that Mr. Grullon was the manager and person in charge of the "Store."

Guskin Decl. ¶ 5.   When Mr. Grullon appeared, the process server asked him if he was in

charge of the store and authorized to accept legal papers for the store, and he responded,

"yes."   See id. ¶¶ 6-7.

## DISCUSSION

### I.    Default Judgment Standard

After the Clerk of the District Court enters a Certificate of Default, the District Court

may, on a plaintiff's application, enter a default judgment if a defendant "has failed to plead or

otherwise defend" an action.   See Fed R. Civ. P. 55(a), (b); see also S.D.N.Y./E.D.N.Y.

Local Civ. R. 55.2(b).   A defendant's default is an admission of all well-pleaded factual

allegations in the complaint except those relating to damages.   Greyhound Exhibitgroup, Inc.

v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect,

Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also City of New York v. Mickalis Pawn Shop,

LLC, 645 F.3d 114, 137 (2d Cir. 2011); Fed. R. Civ. P. 8(b)(6).   Nevertheless, a pleading's

legal conclusions are not assumed to be true, and, on a motion for default judgment, the factual

allegations in the complaint must themselves be sufficient to establish a right to relief.   See

- 4 -

Chen v. JP Standard Constr. Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016) (citing Stein v. Valentine & Kebartas, Inc., No. 10 CV 2465 (RJD), 2012 WL 1416924, at *4-5 (E.D.N.Y. Mar. 15, 2012)); see also Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law").   Moreover, a fact is not "'well-pleaded' if it is inconsistent with other allegations of the complaint[,]" *In re Indus. Diamonds Antitrust Litig.*, 119 F.Supp.2d 418, 420 (S.D.N.Y. 2000), or is "contrary to uncontroverted material in the file of the case," Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973).

Because the extent of the damages pleaded by a plaintiff is not deemed to be established by the default, the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty."   Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)).   This inquiry may be accomplished by evaluating and analyzing affidavits and other documentary evidence submitted by the plaintiff in regards to the level of damages sought.   See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 (2d Cir. 2015); Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).   It is within a court's discretion to determine whether the plaintiff's burden has been met, and whether or not to hold an evidentiary hearing.   See Action S.A. v. Marc Rich & Co. Inc., 951 F.2d 504, 508 (2d Cir. 1991).   The moving party is entitled to all reasonable inferences from the evidence it offers.   See Romanowicz, 577 F.3d at 84; Au Bon Pain, 653 F.2d at 65.

## II.     Operative Pleading

Ordinarily, an amended complaint supersedes an original complaint and "renders it of no legal effect."   Dluhos v. Floating & Abandoned Vessel, Known as N.Y., 162 F.3d 63, 68 (2d Cir. 1998) (quoting Shields v. Citytrust Bancorp. Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).   Here, however, the Amended Complaint added a claim for relief against the defaulting defendants for failure to pay minimum wages.   Accordingly, Rule 5(a)(2) of the Federal Rules of Civil Procedure required plaintiff to serve the Amended Complaint pursuant to the procedures mandated in Rule 4.   See Fed. R. Civ. P. 5(a)(2) ("a pleading that asserts a new claim for relief against [a defaulting party] must be served on that party under Rule 4"). Since plaintiff served the Amended Complaint by mail rather than using the methods provided by Rule 4, the Amended Complaint did not supersede the original Complaint, which remains the operative pleading.   See Int'l Controls Corp. v. Vesco, 556 F.2d 665, 669 (2d Cir. 1977) (affirming default judgment entered on original complaint after amended complaint containing additional claims was filed but not served on the defaulting defendant).

## III.     Service of the Original Complaint

Plaintiff served the individual and corporate defendants by leaving copies of the summons and the original Complaint with Hector Grullon.   Plaintiff's process server states that it was clear to him that Mr. Grullon was the manager of the defendant store/restaurant and that Mr. Grullon expressly stated that he was authorized to accept legal papers for the store/restaurant.   See Guskin Decl. ¶¶ 5-7.   In addition, plaintiff's process server mailed a copy of process to defendant De La Rosa.   See Amended Affidavit of Service (Jan. 29, 2018),

- 6 -

DE #23-3.   Therefore, service of the original Complaint was properly effected on defendants De La Rosa and Pino Grocery pursuant to sections 308(2) and 311(a)(1), respectively, of the New York Civil Procedure Law and Rules.   See N.Y. C.P.L.R. §§ 308(2) (authorizing service on individual by leaving process with person of suitable age and discretion and mailing), 311(a)(1) (authorizing service on corporation by delivery to any agent authorized by appointment to receive service).

## IV.   Liability

### A.   The Fair Labor Standards Act – Legal Principles

#### 1.   Employer/Employee Relationship

The FLSA mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess [of 40 hours] at a rate not less than one and one-half times the regular rate at which he is employed."   29 U.S.C. § 207(a)(1).   The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."   Id. § 203(d); see also id. § 203(g) (defining "employ" as "to suffer or permit to work").   An employee may bring suit against his employer where the employee was "engaged in commerce or in the production of goods for commerce," or where the employer is "an enterprise engaged in commerce or in the production of goods for commerce," id. § 207(a)(1), with an annual gross volume of sales of at least $500,000, id. § 203(s)(1)(A)(ii).

An employee may simultaneously have multiple "employers" for purposes of determining responsibility under the FLSA.   Indeed, the regulations promulgated by the

- 7 -

United States Department of Labor under the FLSA recognize that there may be joint liability

for FLSA violations. See 29 C.F.R. § 791.2 ("A single individual may stand [as an

employee] to two or more employers at the same time under the Fair Labor Standards Act

. . . ."); see also Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (collecting

cases that permit claims against joint employers under the FLSA). In order to determine

whether an employer-employee relationship exists for FLSA purposes, courts have adopted an

"economic realities" test, "grounded in 'economic reality rather than technical concepts,'

determined by reference not to 'isolated factors, but rather upon the circumstances of the

whole activity.'" Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 141 (2d

Cir. 2008) (citing Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961);

Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)).

Although employment relationships under the FLSA are flexible and must be

determined by examining the totality of the circumstances on a case-by-case basis, the Second

Circuit has cited four factors of "formal control" that are pertinent to even the most basic

employer-employee analysis. See Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir.

1984). These "formal control" factors are "whether the alleged employer (1) had the power

to hire and fire the employees, (2) supervised and controlled employee work schedules or

conditions of employment, (3) determined the rate and method of payment, and (4) maintained

employment records." Id. (internal quotations and citations omitted). Even in the absence

of "formal control," an entity or individual may constitute an "employer" if that party had

"functional control" of the employee. See Glatt v. Fox Searchlight Pictures Inc., 293 F.R.D.

516, 526 (S.D.N.Y. 2013) (citing Zheng, 355 F.3d at 71-72), vacated and remanded on other grounds, 811 F.3d 528 (2d Cir. 2016). In accordance with these principles, "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation . . . ." Moon v. Kwon, 248 F.Supp.2d 201, 237 (S.D.N.Y. 2002) (Lynch, J.) (internal quotation and citation omitted). Consequently, joint employers, including corporate officers with the "power to control," may be held jointly and severally liable for FLSA violations. See id. at 236-37 (citations omitted).

### 2. Violations of the FLSA

Under the FLSA, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)). In order to establish liability under the FLSA for failure to pay overtime wages, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946); Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008); Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003)). Employers that violate this provision "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The FLSA contains a two-year statute of limitations for non-willful violations, and, for willful

violations, a three-year limitations period from the date that the claim accrued.   See 29

U.S.C. § 255(a).

**B.      New York Labor Law – Legal Principles**

The New York Labor Law is quite similar to the FLSA in that it mandates overtime

compensation.   See N.Y. Lab. Law § 650 *et seq.*; Gunawan v. Sake Sushi Rest., 897

F.Supp.2d 76, 84 (E.D.N.Y. 2012) ("The NYLL mirrors the FLSA in most but not all

respects.").   Indeed, like the FLSA, for purposes of the NYLL, an employee may have

multiple "employers."   See Vargas v. Jet Peru-Courier Corp., No. 15-CV-6859 (RRM)(PK),

2018 WL 1545699, at *6 (E.D.N.Y. Mar. 14, 2018) ("[T]he analysis of the employment

relationship under both statutes is based on the same factors."), adopted, 2018 WL 1545679

(E.D.N.Y. Mar. 28, 2018); Glatt, 293 F.R.D. at 526 ("Courts use the same tests to determine

joint employment under both the NYLL and the FLSA.") (citations omitted); Sethi v. Narod,

974 F.Supp.2d 162, 188 (E.D.N.Y. 2013) (quoting Spicer v. Pier Sixty LLC, 269 F.R.D.

321, 335 n.13 (S.D.N.Y. 2010)).

Unlike the FLSA, the NYLL requires that employers provide employees, at the time of

hiring, a notice that sets forth, among other things, "the rate or rates of pay and basis thereof,

whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if

any, claimed as part of the minimum wage, . . . ; the regular pay day. . . ; the name of the

employer; . . . [and] the regular hourly rate and overtime rate of pay."   See N.Y. Lab. Law

§ 195(1)(a).   The NYLL, as amended, also requires that employers "furnish each employee

with a statement with every payment of wages" listing certain information, including "the dates

of work covered by that payment of wages; . . . the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."   N.Y. Lab. Law § 195(3).

### C.     Application of the Law to the Facts

Having set forth the relevant legal standards under the FLSA and the NYLL, the Court now considers whether the factual allegations asserted in plaintiff's original Complaint, deemed to be admitted as a result of defendants' default, are sufficient to warrant a finding of liability against each defendant.   See Fed. R. Civ. P. 8(b)(6); Mickalis Pawn Shop, 645 F.3d at 137.

### 1.     Liability of Pino Grocery Corp. and Federico De La Rosa

Plaintiff has sufficiently alleged that Pino Grocery and De La Rosa were his employers for purposes of the FLSA[1] and the NYLL.   See generally Compl. ¶¶ 8-14, 20.   Plaintiff has established that the corporate defendant operated the restaurant where she worked.   With respect to De La Rosa, plaintiff's Complaint alleges that he is the "owner, president, manager and/or operator" of Pino Grocery and controlled the terms and conditions of plaintiff's

---

[1] Plaintiff brings his FLSA claims pursuant to a theory of "enterprise" coverage.   See Compl. ¶ 13 ("Defendants' enterprise [is] "engaged in commerce or the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce"); id. ¶ 14 ("Defendants' annual gross volume of sales made or business done is not less than $500,000").   In the context of a motion for default judgment, courts have found similar conclusory but uncontested allegations to be sufficient to satisfy the interstate commerce requirement.   See Reyes v. Art Tek Design, Ltd., 16-CV-5168 (ADS)(AYS), 2018 WL 614980, at *3 (E.D.N.Y. Jan. 11, 2018), adopted, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2018); Vilchis v. Seoul Sisters, Inc., No. 15-cv-6339 (JBW)(MDG), 2016 WL 6106478, at *3 (E.D.N.Y. Sept. 15, 2016), adopted, 2016 WL 6102342 (E.D.N.Y. Oct. 18, 2016); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F.Supp.3d 19, 33-34 (E.D.N.Y. 2015).

- 11 -

employment.   See id. ¶ 10.   Plaintiff further states that De La Rosa was "heavily involved in the day to day activities of, and actively managed," the corporate defendant's business affairs. See Affidavit of Miguelina Perez (Jan. 10, 2018) ("Perez Aff.") ¶ 4, DE #20-9.   Despite receiving notice of this lawsuit and the inquest, De La Rosa failed to respond.   The allegations contained in the Complaint are sufficient to find that Pino Grocery and Federico De La Rosa were plaintiff's "employers" under the FLSA and the NYLL.   See, e.g., Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case.") (internal quotation marks and citations omitted); Vargas, 2018 WL 1545699, at *6; Peralta v. M & O Iron Works, Inc., No. 12-CV-3179 (ARR)(RLM), 2014 WL 988835, at *5 (E.D.N.Y. Mar. 12, 2014).

## 2. Overtime

The Complaint alleges that plaintiff regularly worked 47.5 hours each week and that defendants did not pay plaintiff the requisite premium for the 7.5 overtime hours.   See Compl. ¶¶ 24-25, 27.   Plaintiff has sufficiently alleged claims against defendants for unpaid overtime under the FLSA and the NYLL.

## 3. Wage Theft Prevention Act ("WTPA")

The Complaint sufficiently alleges that defendants failed to provide the wage notice and statements required by sections 195(1) and 195(3) of the NYLL.   See Compl. ¶¶ 47, 48.

## V. Damages

Although the Court must accept as true the well-pleaded, uncontroverted allegations contained within plaintiff's Complaint as to defendants' liability, it need not give the same

12

deference to plaintiff's allegations regarding damages. See *supra* p. 5. Instead, the Court must undertake an inquiry to determine the extent of damages to a "reasonable certainty," see Credit Lyonnais Secs., 183 F.3d at 155, by evaluating and analyzing affidavits and other documentary evidence submitted by plaintiff, see Fustok, 873 F.2d at 40, as well as plaintiff's sworn statements.

Under both the FLSA and the NYLL, an employer is required to maintain "records of the wages, hours, and persons employed by him." Rodriguez v. Queens Convenience Deli Corp., No. 09-cv-1089(KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing Wicaksono v. XYZ 48 Corp., No. 10 Civ. 3635(LAK)(JCF), 2011 WL 2022644, at *2 (S.D.N.Y. May 2, 2011), adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)). Where, as here, defendants, having defaulted, failed to produce the requisite records, "a plaintiff may meet his or her burden of establishing how many hours he or she worked 'by relying solely on his or her recollection.'" Rodriguez, 2011 WL 4962397, at *2 (quoting Rivera v. Ndola Pharm. Corp., 497 F.Supp.2d 381, 388 (E.D.N.Y. 2007)); see Vilchis, 2016 WL 6106478, at *5. Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate. See Jemine v. Dennis, 901 F.Supp.2d 365, 376-77 (E.D.N.Y. 2012).

### A.    Overtime Wage Claim

Before determining the damages to recommend for the wage-and-hour claims asserted, the Court must address threshold issues concerning the number of hours plaintiff worked per week, plaintiff's hourly rate of pay and the number of weeks she worked.

### 1.    Hours Worked Per Week

Plaintiff alleges in the Complaint, and confirms in her affidavit, that she worked approximately 47.5 hours each week and was paid a flat rate of $330.00 per week.   See Compl. ¶¶ 24-25; Perez Aff. ¶¶ 5-7.

### 2.    Regular Hourly Rate of Pay and Overtime Rate

For purposes of the FLSA, an employee's regular hourly rate is calculated by dividing the weekly salary "by the number of hours which the salary was intended to compensate."   29 C.F.R. § 778.113(a).   However, under the FLSA, "[t]here is a rebuttable presumption that a weekly salary covers 40 hours."   Romero v. Rung Charoen Sub, Inc., 16 Civ. 1239 (VMS), 2017 WL 4480758, at *10 (E.D.N.Y. Sept. 30, 2017).   Similarly, a NYLL regulation provides that a restaurant employee's regular hourly rate is determined by dividing the employees' weekly earnings by the lesser of forty hours or the hours actually worked.   See N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5.

Accordingly, plaintiff's regular hourly rate is $8.25 ($330.00 per week / 40 hours). Since plaintiff did not allege a claim for unpaid minimum wages in the original complaint, she may not recover damages in connection with the first 40 hours worked per week.   See Hosking v. New World Mortg., Inc., No. 07-CV-2200 (MKB), 2013 WL 5132983, at *6 (E.D.N.Y. Sept. 12, 2013) (finding that plaintiffs were not entitled to damages on default judgment for minimum wage claim that was not asserted in original complaint), aff'd, 570 F.App'x 28 (2d Cir. 2014); Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").   However, in calculating unpaid overtime wages based on one-and-one-half times the regular rate, the Court uses the

applicable minimum wage rate to determine the overtime premium owed to plaintiff.[2]   See

Laboy v. Office Equip. & Supply Corp., No. 15 Civ. 3321 (RA) (AJP), 2016 WL 5462976, at

*5 (S.D.N.Y. Sept. 29, 2016) (calculating overtime wages using NYLL minimum wage rate

even though plaintiff did not allege minimum wage claim under the NYLL), adopted, 2016

WL 6534250 (S.D.N.Y. Nov. 2, 2016), default judgment vacated by stipulation, 2017 WL

6501878 (S.D.N.Y. Apr. 10, 2017).   For example, for those weeks that plaintiff worked in

2016, plaintiff is entitled to unpaid overtime wages in the amount of $101.25 per week ($13.50

x 7.5 hours).   For those weeks that plaintiff worked in 2017, plaintiff is owed unpaid overtime

wages in the amount of $118.13 per week ($15.75 x 7.5 hours).   Therefore, this Court

recommends awarding plaintiff overtime wages of $911.25 ($13.50 x 9 weeks) for 2016 and

$1,181.30 ($15.75 x 10 weeks), for a total of $2,092.55.[3]

### B.    Liquidated Damages

Plaintiff requests liquidated damages under the FLSA and/or the NYLL.   See

Plaintiff's Memorandum of Law (Jan. 10, 2018) ("Pl. Mem.") at 7-8, DE #20-2.

Under the FLSA, an employer who violates the overtime compensation requirements is

liable for "an additional equal amount as liquidated damages," unless the employer

---

[2] The New York minimum wage rate was $9.00 during 2016 and $10.50 during 2017; the
federal minimum wage rate was $7.25.   See 29 U.S.C. § 206(a)(1); N.Y. Labor Law
§ 652(1).   This Court applies the higher of the two rates.   See 29 C.F.R. § 778.5; Fermin, 93
F.Supp.3d at 49.

[3] Although plaintiff sought an award of interest in the Complaint, her subsequent inquest
submissions do not contain any mention of interest.   Therefore, this Court recommends
against awarding plaintiff interest.   See Vargas, 2018 WL 1545699, at *10 (treating request
for interest as abandoned).

demonstrates to the Court that it acted in good faith and had reasonable grounds for believing that its actions were lawful.   See 29 U.S.C. §§ 216(b), 260.   As a result of defendants' default in this action, the record is devoid of evidence of defendants' good faith or reasonable belief.   See Peralta, 2014 WL 988835, at *10.   Therefore, plaintiff is entitled to an award of liquidated damages under the FLSA.

The current version of the NYLL similarly authorizes an award of liquidated damages to a prevailing plaintiff "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law . . . ."   N.Y. Lab. Law § 663(1). Liquidated damages under the NYLL are calculated at 100 percent of the unpaid wages due to a prevailing plaintiff.   See id.

Because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct."   Rana v. Islam, -- F.3d --, 2018 WL 1659667, at *4 (2d Cir. Apr. 6, 2018).

As discussed above, since the NYLL provides for a higher overtime rate, the Court recommends awarding liquidated damages under the NYLL.   See id. at *5 (court may award the greater of the two liquidated damages awards).   Applying 100 percent liquidated damages as required, the Court recommends awarding plaintiff $2,092.55 in liquidated damages for unpaid overtime wages under the NYLL.

### C.    Statutory Damages Under the WTPA

Pursuant to section 198(1-b) of the NYLL, an employee who, within ten business days of his or her first day of employment, was not provided with notice in accordance with section

195(1) of the NYLL, is entitled to statutory damages of $50 per day during which the violation occurred, up to a maximum of $5,000.   See N.Y. Lab. Law § 198(1-b).   Section 198(1-d) of the NYLL provides that, with respect to regular wage statements required pursuant to section 195(3), an employee who has not been provided with such a statement is entitled to recover statutory damages of $250 per day, up to a maximum of $5,000.   See N.Y. Lab. Law § 198(1-d).

Plaintiff never received a proper wage notice or statements.   As plaintiff worked for five days per week for approximately 19 weeks, she is entitled to recover $4,750 (95 days x $50) for violations of section 195(1).   For violations of section 195(3), plaintiff is entitled to the $5,000 statutory maximum (95 days x $250 = $23,750).   Therefore, this Court recommends that the District Court award plaintiff a total of $9,750 for defendants' violations of the WTPA notice and statement requirements.

### D.   Attorney's Fees

#### 1.   Applicable Legal Standard

Under both the FLSA and NYLL, a prevailing plaintiff is entitled to an award of "reasonable" attorney's fees.   See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).   Plaintiff bears the burden of proving the reasonableness of the fees sought.   See Savoie v. Merchs. Bank, 166 F.3d 456, 463 (2d Cir. 1999).   In considering an application for attorney's fees, the Court must first determine the presumptively reasonable fee.   See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008).   This

presumptively reasonable fee - or lodestar[4]- is essentially "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."   Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citing Arbor Hill, 522 F.3d at 190) (internal quotations omitted).

Courts can and should exercise broad discretion in determining a reasonable fee award. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in making this equitable judgment."); Arbor Hill, 522 F.3d at 190 (referencing the court's "considerable discretion").   The method for determining reasonable attorney's fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases.   See Arbor Hill, 522 F.3d at 186 n.3, 190.   In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits.   This is known as the "forum rule."   See Simmons, 575 F.3d at 174-75 (recounting history of the forum rule); see also Arbor Hill, 522 F.3d at 191 ("We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally.").

Once the Court determines the reasonable hourly rate, it must multiply that rate by the

---

[4]   The lodestar is the product of the number of hours reasonably expended on the litigation and a reasonable hourly rate.   See Arbor Hill, 522 F.3d at 183 ("The fee - historically known as the 'lodestar'- to which [ ] attorneys are presumptively entitled is the product of hours worked and an hourly rate.").

number of hours reasonably expended, in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190.  With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit."  N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).  The Court must review these time records and the hours an attorney billed in order to determine the reasonableness of such and, in doing so, should examine the value of the work product and "'exclude excessive, redundant or otherwise unnecessary hours.'"  Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07-CV-319 (ARR) (VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010) (quoting Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 2009)), adopted, 2010 WL 2539661 (E.D.N.Y. June 17, 2010); see Hensley, 461 U.S. at 434; Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994).  "[A] fee award should be based on scrutiny of the unique circumstances of each case . . . ."  McDaniel v. Cty. of Schenectady, 595 F.3d 411, 426 (2d Cir. 2010) (internal quotations and citations omitted).

In this case, plaintiff seeks $9,403.00 in attorney's fees for the time incurred by David Harrison, managing partner of Harrison Harrison & Associates, Ltd., and two recent law school graduates.  See Pl. Mem. at 9.

## 2.  Reasonable Hourly Rate

Plaintiff requests an hourly rate of $400 for Mr. Harrison's services.  See Declaration of David Harrison (Jan. 10, 2018) ("Harrison Decl.") ¶ 14, DE #20-3.  Recent cases have held that reasonable hourly rates for partners in wage and hour cases in this District typically range from $300 to $400.  See Xu v. JNP Bus Serv. Inc., 16-CV-245 (AMD) (ST), 2018 WL 1525799, at *10 (E.D.N.Y. Feb. 26, 2018), adopted in part and rejected in part on other

grounds, 2018 WL 1525662 (E.D.N.Y. Mar. 28, 2018); Leon v. Chen, 16-CV-480(KAM)(PK), 2017 WL 1184149, at *10 (E.D.N.Y. Mar. 29, 2017) (reducing partner's rate to $350 per hour); Quiroz v. Luigi's Dolceria, Inc., No. 14-CV-871 (VVP), 2016 WL 6311868, at *4 (E.D.N.Y. Oct. 28, 2016).   Harrison's requested rate is, however, excessive under the circumstances of this case.   First, while Harrison is the managing partner of a law firm founded seven years ago, see Harrison Decl. ¶ 9, during which time he has represented plaintiffs in numerous FLSA cases, see id. ¶¶ 9-10, he has less experience than some other attorneys who have been awarded rates at the higher end of the applicable range in this District.   See Vargas, 2018 WL 1545699, at *11 (recommending award of $400 per hour to attorney with twenty years' litigation experience); AdvantEdge Corp. v. Krajicek, 16 CV 1643 (WFK)(RML), 2017 WL 7411018, at *3 (E.D.N.Y. Oct. 2, 2017) (recommending $400 per hour to partner with "significant commercial litigation experience" and noting that "rates higher than $350 per hour are generally reserved for the unusually expert litigator or other special circumstances").   Moreover, this was an uncontested action with defaulting defendants, not a hotly litigated lawsuit requiring a high level of skill.   Accordingly, this Court recommends awarding Mr. Harrison the reduced rate of $375 per hour.   See Cohetero v. Stone & Tile, Inc., 16-CV-4420 (KAM)(SMG), 2018 WL 565717, at *5 (E.D.N.Y. Jan. 25, 2018) (awarding $375 per hour to partner with 15 years' practice experience); Martinez v. Alimentos Saludables Corp., 16 CV 1997 (DLI) (CLP), 2017 WL 5033650, at *27 (E.D.N.Y. Sept. 22, 2017) (recommending reduced award of $375 per hour for managing partner of firm).

Plaintiff further seeks approval of an hourly rate of $150 per hour for the firm's law

graduate/clerks.  <u>See</u> Harrison Decl. ¶¶ 12-14.  The prevailing hourly rate for associates
(i.e., admitted attorneys) in FLSA cases in this District is from $100 to $300.  <u>See</u> <u>Xu</u>, 2018
WL 1525799, at *10 (collecting cases).  Law school graduates who have not yet been
admitted to the bar have been awarded rates between $75 and $100 per hour.  <u>See</u> <u>Lopez v.</u>
<u>Yossi's Heimishe Bakery Inc.</u>, No. 13-CV-5050(FB)(CLP), 2015 WL 1469619, at *13
(E.D.N.Y. Mar. 30, 2015) (collecting cases and awarding $75 per hour for law clerk); <u>see</u>
<u>also</u> <u>Flores v. Mamma Lombardi's of Holbrook, Inc.</u>, 104 F.Supp.3d 290, 314 (E.D.N.Y.
2015) (awarding $95 per hour for law clerk).  This Court recommends awarding an hourly
rate of $100 per hour for the law graduate/clerks.

### 3.  Reasonable Number of Hours

Counsel claims that he and his law clerks spent 32.02 hours on this matter.  <u>See</u>
Harrison Decl. ¶ 15.  Although the overall time spent is not unreasonable, certain of the tasks
completed by Mr. Harrison should have been undertaken by an associate or paralegal at a
lower billing rate.  For example, several of the billing entries show that Mr. Harrison charged
for time spent filing documents on the Court's Electronic Case Filing system.  <u>See</u>, <u>e.g.</u>,
billing entries for 5/16/17, 7/14/17, 10/26/17, 10/30/17.  Such administrative tasks should
not be billed at partner rates.  <u>See</u> <u>Ryan v. Allied Interstate, Inc.</u>, 882 F.Supp.2d 628, 635
(S.D.N.Y. 2012).  Moreover, as discussed above, the amendment of the complaint to add a
claim for minimum wages was ineffective since the Amended Complaint was never properly
served on defendants.  Therefore, the Court would be justified in disallowing recovery for
time spent on drafting the Amended Complaint.  <u>See</u>, <u>e.g.</u>, <u>Rozell v. Ross-Holst</u>, 576
F.Supp.2d 527, 538 (S.D.N.Y. 2008) (eliminating hours spent on withdrawn motion to

dismiss); <u>Small v. New York City Transit Auth.</u>, No. CV 2003-2139(SLT)(MDG), 2014 WL

1236619, at *8-10 (E.D.N.Y. Mar. 25, 2014) (disallowing time spent on several tasks).

However, because of counsel's use of block billing, the Court cannot ascertain precisely how

much time was spent on the Amended Complaint.   Therefore, rather than conducting a line-

by-line review of the billing entries, this Court recommends applying a ten percent across-the-

board reduction to the hours claimed.   See <u>Koszkos v. Janton Indus., Inc.</u>, No. 15-CV-1700

(SJ) (JO), 2016 WL 4444329, at *9 (E.D.N.Y. Aug. 3, 2016) (recommending 30 percent

across-the-board deduction to "trim[] the fat" from fee application), <u>adopted</u>, 2016 WL

4444782 (E.D.N.Y. Aug. 23, 2016).

Accordingly, this Court recommends awarding attorneys' fees as follows:

| Attorney | Reduced Hours | Recommended Hourly Rate | Recommended Fees |
|---|---|---|---|
| D. Harrison | 16.56 hours | $375 | $6,210.00 |
| M. Heitz | 1.95 hours | $100 | $   195.00 |
| R. Arbolino | 10.30 hours | $100 | $1,030.00 |
| **Total** | | | **$7,435.00** |

Applying the reduced hourly rates to the reduced number of hours reflected in counsel's

billing records, the Court recommends awarding attorney's fees in the amount of $7,435.00.

**E.      Costs**

Plaintiff further requests an award of $77.26 for costs incurred in effecting service of

process.[5]   See Harrison Decl. ¶¶ 17-18.   As a general matter, a prevailing plaintiff in an

action under the FLSA and the NYLL is entitled to recover costs from the defendant.   See 29

---

[5] Plaintiff was not required to pay the court's filing fee upon commencement of this action
because the Court granted her application to proceed <i>in forma pauperis</i>.   See Order (June 21,
2017), DE #8.

U.S.C. § 216(b); N.Y. Labor Law § 663(1).  However, only those costs that are tied to "[i]dentifiable, out-of-pocket disbursements" are recoverable.  <u>Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.</u>, No. 13 Civ. 3061(JGK), 2014 WL 2624759, at *8 (S.D.N.Y. June 10, 2014) (quoting <u>Kuzma v. IRS</u>, 821 F.2d 930, 933-34 (2d Cir. 1987)).  Since the costs incurred here are routinely recoverable, the Court recommends awarding plaintiff costs in the amount requested, i.e., $77.26.

## CONCLUSION

For the reasons explained above, the Court recommends that default judgment be granted against both named defendants, jointly and severally, in the amount of $21,447.36, representing $13,935.10 in compensatory, liquidated, and statutory damages, $7,435.00 in attorney's fees and $77.26 in costs.

Any objections to the recommendations contained herein must be filed with Judge Mauskopf on or before May 3, 2018.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*).

**SO ORDERED.**

**Dated:**    **Brooklyn, New York**
          **April 16, 2018**

/s/ *Roanne L. Mann*
_____
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**